IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRENDA LEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-CV-626-PJC |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Claimant, Brenda Lee ("Lee"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the Decision of the Commissioner of the Social Security Administration ("Commissioner") denying Lee's application for disability benefits under the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Lee appeals the Decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Lee was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's Decision.

**Claimant's Background**

Lee was born on November 4, 1963, and was 43 years old at the time of the ALJ's Decision. (R. 47, 192). She has an eleventh grade education. (R. 195). She testified that she was not married at the time of the hearing, although she referred to a "common law" relationship. (R. 192-93). Her previous employment was primarily as a school bus driver,

working approximately two and one-half hours each morning and evening. (R. 196). Lee has problems with her right knee, including pain, stiffness, and swelling. (R. 198-202). She had surgery to remove a cyst from the knee. (R. 199). Because the knee gives out, she falls perhaps two to three times a week. (R. 200-01). She takes over-the-counter pain relievers, but does not fill prescriptions for strong pain medication, because she can't afford them. (R. 202-03).

Because of her knee, Lee fell down some stairs at her apartment and injured her right shoulder and neck area, causing pain, which she still experiences. (R. 203-05). Lee has asthma and uses an inhaler twice a day. (R. 206). She smokes, and she testified that she has been diagnosed with onset of chronic obstructive pulmonary disorder. (R. 206-07). She also has lower back pain. (R. 207-08). She previously used cocaine and drank alcohol, although she testified that she hadn't been drinking for two months. (R. 208-12). She was once hit in the head during a domestic violence episode. (R. 213-14). She has a hernia. (R. 214). She has problems with concentration. (R. 197-98, 214-15). She feels depressed, has trouble sleeping, and has anxiety and panic attacks. (R. 215-16). She lives in a van, and she sleeps a lot due to her depression. (R. 219-20). She testified that she cannot afford prescription drugs she has been prescribed for her depression and anxiety issues. (R. 216). She has eczema. *Id.* According to her testimony, she can't walk or sit for long periods of time, she can't lift, she can't walk up or down stairs, and she can't squat. (R. 216-18). She doesn't drive long distances because of her knee. (R. 219).

The first medical file in the record is a report dated October 4, 2002, of an MRI performed in Kansas City on Lee's right knee. The MRI showed a mass in the knee, along with various changes and tears in the surrounding structures. (R. 115-17). A new patient visit report

dated October 14, 2002, showed a plan to perform a biopsy procedure. (R. 119-20).

The next record is from OSU Physicians in Tulsa dated March 24, 2005, showing that Lee presented with complaints of swelling and pain in her right knee. (R. 122-23). She was given a prescription for 800 mg Motrin. (R. 123).

On April 19, 2005, Lee was seen by the Emergency Department at Southcrest Hospital in Tulsa. (R. 124-25). She was apparently prescribed hydrocodone and acetaminophen for bruises and shoulder pain. *Id.* She was told to return to OSU Healthcare for follow up.

Lee was seen at Hillcrest emergency room on August 23, 2006, at which time she tested positive for cocaine. (R. 169). She reported drinking a pint to a fifth of whiskey about every other day. *Id.* She was diagnosed with major depression, history of posttraumatic stress disorder ("PTSD"), alcohol dependence and cocaine abuse, and she was assessed with a current global assessment of functioning ("GAF") score of 20, with highest in the past year of 60. (R. 170). She was discharged on August 25, 2006, with referrals to follow up with Family & Childrens Services and to attend a 12-step program. (R. 167).

On June 28, 2005, a psychological evaluation was performed by an agency consultant, Dr. Michael Morgan. (R. 126-31). Dr. Morgan diagnosed Lee with PTSD, "[m]ajor depressive disorder, recurrent, moderate," and "[a]lcohol dependence without physiological dependence, sustained partial remission." (R. 130). Dr. Morgan assessed Lee with a current GAF of 51-55. *Id.* In his prognosis, he noted that his diagnosis of sustained partial remission came from Lee's report that she drank one beer six months ago. *Id.* He concluded:

> With complete abstinence from all recreational drugs, and with psychotherapy and appropriate psychotropic medication, it is likely that [Lee] could achieve a higher level of psychological functioning, in three to four years.

*Id.* Dr. Morgan's opinion was that Lee could manage her benefit payments. (R. 131).

On July 8, 2005, an agency Internal Medicine Consultation was conducted by Dr. Bryant Boyd. (R. 132-37). He noted several conditions in the impressions portion of his report: obesity, knee pain, effusion of knee, right cervical rib, bursitis right shoulder, hallux valgus right foot, reducible umbilical hernia, history of asthma, and history of eczema. (R. 133-34). On the range of motion portion of his report, Dr. Boyd noted that Lee's right knee had maximum range of motion of 140 degrees, instead of the normal 150 degrees. Other than that, Dr. Boyd found the range of motion for Lee's back, neck, hip, knees, and ankles to be normal. (R. 135). Dr. Boyd found all range of motion for Lee's hands and wrists to be normal. (R. 136). Dr. Boyd noted no problems with range of motion or pain for Lee's spine. (R. 137).

A Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment was completed by agency consultant Burnard L. Pearce, Ph.D. on July 29, 2005. (R. 138-50, 163-65). Dr. Pearce found the presence of a depressive syndrome under Listing 12.04. (R. 141). He found that Lee had an anxiety-related disorder evidenced by recurrent and intrusive recollections of a traumatic experience under Listing 12.06. (R. 143). Pursuant to Listing 12.09, Dr. Pearce found that Lee had behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system. (R. 146). For the "Paragraph B Criteria,"[1] Dr. Pearce assessed Lee with moderate limitations of her activities of daily living and

---

[1]  There are broad categories known as the "Paragraph B Criteria" of the Listing of Impairments used to assess the severity of a mental impairment. The four categories are (1) restriction of activities of daily living, (2) difficulties in maintaining social functioning, (3) difficulties in maintaining concentration, persistence or pace, and (4) repeated episodes of decompensation, each of extended duration. Social Security Ruling ("SSR") 96-8p; 20 C.F.R. Part 404 Subpt P, App. 1 ("Listings") §12.00C. *See also Carpenter v. Astrue*, 537 F.3d 1264, 1268-69 (10th Cir. 2008).

4

of her social functioning, and mild difficulties of concentration, persistence, or pace, with one or two episodes of decompensation.   (R. 148).

For Lee's residual functional capacity ("RFC"), Dr. Pearce found that Lee was moderately limited in her abilities to understand and to remember detailed instructions, to carry out detailed instructions, and to interact appropriately with the public. (R. 163-4).  Dr. Pearce found no significant limitations of any other items on the form. *Id.*   In his summary, Dr. Pearce stated the following:

> This claimant is able to perform simple, routine tasks and follow simple instructions.  She is able to interact appropriately with co-workers, supervisors and the general public in a superficial manner.  She is also able to handle change in work settings.

(R. 165).

A Physical Residual Functional Capacity Assessment was completed by an agency physician on August 5, 2005.  (R. 154-61).  The consultant found that Lee was capable of performing the exertional demands of medium work.  (R. 155).  The consultant also found that Lee was only capable of occasionally climbing, balancing, stooping, kneeling, crouching, or crawling.  (R. 156).    The consultant found no other limitations of Lee's RFC.  (R. 157-61).

## Procedural History

On April 25, 2005, Lee filed applications for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI, 42 U.S.C. § 401 *et seq.*,  (R. 47-49, 175-77).  Lee alleged disability beginning December 15, 2003.  Lee's application for benefits was denied in its entirety initially and on reconsideration. (R. 22-23).  A hearing before ALJ Richard J. Kallsnick was held April 6, 2007, in Tulsa, Oklahoma.  (R. 187-229).  By Decision dated April 13, 2007, the ALJ found that Lee was not disabled at any time through the date of the Decision.

(R. 12-20). On August 31, 2007, the Appeals Council denied review of the ALJ's findings. (R. 3-5). Thus, the Decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1991).

Substantial evidence is such evidence "as a reasonable mind might accept as adequate to support a conclusion." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (citation omitted). In reviewing the decision of the Commissioner, the court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Id.* (citation omitted). Nevertheless, the court examines "the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine[s] if the substantiality of the evidence test has been met." *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991).

## Decision of the Administrative Law Judge

At Step One, the ALJ determined that Lee met insured status and that Lee had not engaged in substantial gainful activity. (R. 14). At Step Two, the ALJ found that Lee had severe impairments of PTSD, major depressive disorder, recurrent, moderate, obesity, alcohol dependence without physiological dependence, history of drug abuse, and chronic right knee pain. (R. 14-15).

At Step Three, the ALJ found that Lee's mental disorders did not have the marked limitations of Paragraph B Criteria that are required by Listings 12.04 or 12.06. (R. 15). The ALJ found that Lee had the RFC to perform light work, although he limited her to only occasional climbing, stooping, kneeling, crouching, or crawling. *Id.* At Step Four, Lee was unable to return to her previous work as a fast food assistant manager, due to the limitation found

in Lee's RFC. (R. 24). At Step Five, the ALJ found that there are jobs in the national economy that Lee can perform. (R. 25). The ALJ thus concluded that Lee was not disabled under the Social Security Act at any time through the date of the Decision. *Id.*

## Review

Lee presents several allegations of error. First, Lee asserts that the ALJ should have further developed the record concerning Lee's right shoulder pain and asthma, and second that those conditions should have been included in the severe impairments found at Step Two. Third, Lee complains about the ALJ's formulation of her RFC, and fourth, Lee objects to the ALJ's credibility determination. Because the ALJ's Decision was supported by substantial evidence and the correct legal standards were applied, this Court affirms the Decision.

**I.      Development of the Record**

Lee contends that the ALJ should have further developed the record concerning Lee's right shoulder injury and her asthma. The Tenth Circuit discussed at length the duty of an ALJ to develop the record in *Hawkins v. Chater*, 113 F.3d 1162 (10th Cir. 1997); *see also Flaherty v. Astrue*, 515 F.3d 1067, 1071-72 (10th Cir. 2007) (*discussing Hawkins*). A social security hearing is not adversarial, and the ALJ is responsible to make sure that the record is adequately developed, depending on the issues raised. *Hawkins,* 113 F.3d at 1164. After discussing the question of when an ALJ should seek a consultative examination, the *Hawkins* court stated that the starting point is "the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Id.* at 1167. Once the claimant has established evidence suggesting a "reasonable possibility" of a condition, then it becomes the responsibility of the ALJ to order a

consultative examination if it is necessary to resolve the issue. *Id.* The Commissioner is given broad latitude in deciding whether to order a consultative examination. *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990).

In the present case, the record does not support Lee's contention that the ALJ should have ordered further examinations. The record reflects that Lee received a thorough medical examination, as well as a thorough examination by a qualified psychologist. (R. 132-37, 126-31). The Internal Medicine Consultation by Dr. Boyd noted Lee's complaint of right shoulder pain, as well as Lee's occasional use of an Albuterol inhaler. (R. 132). Thus, Dr. Boyd was aware of these conditions, and indeed he included them in the "impressions" portion of his report. (R. 133-34). His report reflects that there was no wheezing, and that his examination of Lee's right shoulder revealed minimal decrease in the range of motion and "some discomfort." (R. 133). The record was fully developed regarding these two issues, and the ALJ did not commit error by failing to order further examinations.

## II.     Step Two List of Severe Impairments

Lee claims that the ALJ erred at Step Two in failing to list Lee's asthma and right shoulder pain among her severe impairments. In *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004), the Tenth Circuit explained that the Step Two standard is a *de minimis* one. *Id., citing Bowen v. Yuckert*, 482 U.S. 137, 158 (1987) (O'Connor, J., concurring) ("Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking" the subsequent steps of the sequential evaluation process).

"However, the claimant must show more than the mere presence of a condition or

9

ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). "In determining whether a severe impairment exists, the Commissioner considers the 'effect' of the impairment." *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003) (citing 20 C.F.R. § 416.920(a)) (low weight condition had no effect on the claimant's ability to work and therefore was not severe at Step Two). In the present case, Lee established the presence of a right shoulder injury and asthma, but she did not establish that either of these conditions would have more than minimal effect on her ability to work. To the contrary, the physical examination reflected that the effect of these two conditions was, indeed, minimal. Dr. Boyd's report showed no wheezing or other effects of Lee's asthma, and his examination of Lee's right shoulder revealed minimal decrease in the range of motion and "some discomfort." (R. 133). Further, even if the Court found that these two conditions should have been included in the ALJ's analysis at Step Two, the Court would find this omission to be harmless error. *See Martinez v. Astrue*, 2008 WL 3410092 (10th Cir. 2008) (unpublished) (omission of Step Two analysis was harmless error when the claimant's impairments were discussed at other sequential-evaluation steps, *citing Fischer-Ross v. Barnhart*, 431 F.3d 729 (10th Cir. 2005)).

**III.     The ALJ's Determination of Lee's RFC and the ALJ's Credibility Determination**

Lee's third and fourth assertions of error overlap, and the Court will treat them together. Lee asserts that the ALJ's RFC analysis is inadequate because it did not properly consider Lee's depression and PTSD and because the ALJ did not properly account for Lee's pain related to her right knee. First, the ALJ did properly consider Lee's depression and PTSD in evaluating Lee's RFC. Lee complains of the wording of the ALJ's determination in that his sentence said he is persuaded that Lee's "depression and PTSD *would significantly affect* her ability to engage in

work related activities." (R. 15) (emphasis added). Lee seems to contend that the italicized language indicates that the ALJ failed to find that Lee's mental conditions actually did affect her ability to engage in work related activities. However, in the next sentence of the Decision, the ALJ goes on to find that these mental conditions have resulted in moderate restrictions and limitations of the Paragraph B Criteria. *Id.* The Court therefore finds Lee's complaint regarding the italicized language to be invalid.[3]

Lee further complains that the ALJ noted that the examining psychologist stated that Lee could improve with complete abstinence from recreational drugs, because the ALJ did not recite the entire sentence of Dr. Morgan's report:

> With complete abstinence from all recreational drugs, and with psychotherapy and appropriate psychotropic medication, it is likely that [Lee] could achieve a higher level of psychological functioning, in three to four years.

(R. 130). Had this been a key finding of the ALJ's Decision, the Court may have found the ALJ's selective description of Dr. Morgan's conclusion to be troubling. However, the sentence

---

[3]  In her brief, Lee does not complain that the ALJ failed to include the following limitations, found by the agency consultant, in the ALJ's RFC paragraph of the Decision (R. 15):

> This claimant is able to perform simple, routine tasks and follow simple instructions. She is able to interact appropriately with co-workers, supervisors and the general public in a superficial manner. She is also able to handle change in work settings.

(R. 165). In all other respects, the ALJ adopted the opinion of the agency consultants in formulating Lee's RFC. The ALJ did include these limitations in his hypothetical to the VE at Step Five, however. (R. 225-26). The Court therefore finds, even if Lee had raised the error of this omission in the RFC paragraph, that the error would have been harmless error, because there is substantial evidence supporting the ALJ's decision, at Step Five, that jobs exist that Lee can perform with her correct RFC, including the above limitations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729 (10th Cir. 2005).

in question is in the middle of ALJ's description of the history of Lee's psychological difficulties. (R. 17). Any distortion of Dr. Morgan's report is not reversible error because it does not appear to have affected the ALJ's conclusions regarding Lee's RFC.

More valid is Lee's complaint that the ALJ's Decision recites that Lee "has never been hospitalized for psychiatric causes." (R. 18). Lee was in inpatient care at Hillcrest for two or three days in August 2006. (R. 167-72). The chief complaint was listed as "detox," so it is possible that the ALJ did not include this episode as hospitalization for "psychiatric causes." Lee asserts that the ALJ cited to Lee's lack of mental health treatment records and lack of hospitalization for mental reasons as factors undermining Lee's credibility. The Court finds it significant that, immediately after noting this lack of treating physician evidence, the ALJ then summarizes the findings of the non-examining state agency consultant who gave his opinion as to Lee's RFC. The Court's conclusion is that the ALJ's reference to the lack of treating physician evidence was not made in connection with his credibility determination, but rather was intended to explain why he relied on the opinion of the agency consultant. If the ALJ's statement regarding Lee's treatment records and hospitalization is erroneous, however, it does not create reversible error in that it was a minor comment rather than a major basis for the formulation of his RFC and credibility determinations. *See Bean v. Chater*, 77 F.3d 1210, at 1213-14 (10th Cir. 1995) (ALJ's factual error on one point did not create reversible error on credibility determination).

Lee also complains that the ALJ did not make a proper evaluation of Lee's pain resulting from her right knee, but the Court finds no basis for this complaint. The Tenth Circuit in 2004 reviewed the framework for proper analysis of a claimant's allegations of disabling pain.

*Branum v. Barnhart*, 385 F.3d 1268, 1273-74 (10th Cir. 2004) (*citing Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987)). The ALJ in the present case found that Lee's knee pain satisfied the first two prongs of the three-part inquiry in that objective medical evidence established a pain-producing impairment of her knee and there was a connection between the impairment and the subjective allegations of pain. Pursuant to *Branum*, the ALJ was then required to consider the third prong: "whether, considering all of the evidence, both objective and subjective, [the claimant's] pain is in fact disabling." *Branum*, 385 F.3d at 1273.

> To determine the credibility of pain testimony, the ALJ should consider such factors as:
>
> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id., quoting Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (further quotations omitted).

In the present case, the ALJ found that Lee's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but [Lee's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." R. 17. The ALJ then cited to the Physical Residual Functional Capacity Assessment completed by an agency physician as support that Lee could perform a range of medium work, that Lee's right knee had only a slightly decreased range of motion, and that her gait was normal for speed, stability, and safety. (R. 17, 154-61). While it would have been preferable for the ALJ to discuss the factors cited by *Branum* in more detail, the Court finds that this brief discussion was

adequate and showed that the ALJ's credibility determination is supported by substantial evidence.  *See Mann v. Astrue*, 2008 WL 2718821 (10th Cir. 2008) (unpublished) (finding *Branum* satisfied by ALJ's discussion of three points).

The Decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  The Decision is **AFFIRMED**.

Dated this 3rd day of October, 2008.

_____
Paul J. Cleary
United States Magistrate Judge